779 So.2d 923 (2000)
Elena Ledo BENNETT and Micah Keith Bennett
v.
Dr. Robert KRUPKIN and St. Paul Fire and Marine Insurance Company.
No. 99 CA 2702.
Court of Appeal of Louisiana, First Circuit.
December 22, 2000.
Writ Denied March 30, 2001.
Margaret Bradley, Metairie, Counsel for Defendant-Appellant St. Paul Fire & Marine Insurance Company.
Donald S. Zuber, Baton Rouge, Counsel for Defendant-Appellee Robert Krupkin, M.D.
Steve C. Thompson, Baton Rouge, Counsel for Plaintiffs-Appellees Elena Ledo Bennett and Micah Keith Bennett.
Before: WHIPPLE, FOGG and CRICHTON, JJ.[1]
SCOTT J. CRICHTON, Judge Pro Tem.
St. Paul Fire & Marine Insurance Company ("St. Paul") appeals a final partial summary judgment[2] against it on the issue of coverage for a medical malpractice claim, filed after the "claims made" policy had lapsed, for alleged acts of malpractice that occurred during the period covered by the policy. Finding that the district court *924 correctly applied our decision in Hedgepeth v. Guerin, No., 96-1044, (La.App. 1 Cir. 3/27/97) 691 So.2d 1355, we affirm. At issue herein is whether, under the specific facts of this case, the "claims made" provision in this medical malpractice insurance policy contravenes public policy or statutory law. The merits of the malpractice claim were not addressed by the district court and are not at issue herein.

FACTS AND PROCEDURAL HISTORY
The facts are undisputed: Elena Ledo Bennett[3] was a patient of Dr. Robert Krupkin for several years prior to October 25, 1996, the date Mrs. Bennett alleges that she learned that she had breast cancer which had been allegedly misdiagnosed by Dr. Krupkin. Dr. Krupkin was insured by St. Paul during the time of the alleged misdiagnosis; policy premiums were paid through January 15, 1997. The St. Paul policy was a "claims made" policy and thus, covered only claims which were made during the policy period and arose from events which occurred during the retroactive period covered by the policy. The policy, in pertinent part, provides:
To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while this agreement is in effect. A claim is made on the date you first report an incident or injury to us or our agent. You must include the following information:
 Date, time and place of the incident.
 What happened and what professional service you performed.
 Type of claim you anticipate.
 Name and address of injured party.
 Name and address of any witness.
St. Paul gave Dr. Krupkin the option to renew his policy or to pay for a "tail" extension,[4] but Dr. Krupkin neither renewed his policy nor opted for the tail coverage. The Bennetts filed a medical malpractice claim against Dr. Krupkin with the Commissioner of Insurance on March 20, 1997, and filed suit against Dr. Krupkin and St. Paul on April 17, 1997.[5]
St. Paul moved for summary judgment, contending that there was no coverage under its claims made policy because, although the policy was in effect at the time the Bennetts' claim of malpractice arose, the policy was not in effect at the time the claim was made. The Bennetts filed a cross motion for summary judgment, contending that La. R.S. 22:629 and Hedgepeth, supra, mandated coverage under these facts. The Bennetts' motion also asserted that they were entitled to summary judgment under the Direct Action Statute, La. R.S. 22:655, based on their allegations that Dr. Krupkin and St. Paul had notice of the malpractice claim before expiration of the policy period.[6] The district court denied St. Paul's motion for summary judgment and, on September 3, 1999, granted partial summary judgment in favor of the Bennetts and against St. Paul on the issue of coverage as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment of plaintiffs be granted against St. Paul Fire and Marine Insurance Company on the issue of insurance coverage and that the *925 Court hereby decrees that St. Paul Fire and Marine Insurance Company does provide coverage to Dr. Robert Krupkin in favor of plaintiffs for the alleged malpractice (the Court making no ruling on the merits of the underlying malpractice claim);
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgment rendered herein be designated as a final judgment insofar as there is no just reason for delay and, in fact, delay will do harm to the parties insofar as the coverage issue affects the remaining procedural aspects of the case, including whether or not Dr. Robert Krupkin is a qualified health care provider such as to cause plaintiffs to go through and comply with the provisions of La. R.S. 40:1299.41 et seq and insofar as the parties have delayed litigating the merits of the case until the coverage issues are established.
From this judgment, St. Paul appeals, asserting that the district court erred in granting summary judgment in favor of the Bennetts' based upon its interpretation of Hedgepeth.

DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Victorian v. American Deposit Ins. Co., 99-1571 (La.App. 1 Cir. 6/23/00), 764 So.2d 1218 (citing Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29). We review this partial summary judgment de novo, using the same criteria used by the trial court in deciding whether a summary judgment should be granted. Walston v. Lakeview Reg'l Med. Ctr., 99-1920 (La. App. 1 Cir. 09/22/00), 768 So.2d 238. The applicable substantive law determines the materiality of facts in a summary judgment setting. Id. citation omitted. The summary judgment motion will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B); Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.02/29/00), 755 So.2d 226, 230, 231.
The facts of this case are undisputed. Dr. Krupkin had coverage under the St. Paul policy at the time the alleged malpractice occurred but not at the time the claim was made. On the face of the insurance policy, Dr. Krupkin is not covered for the Bennetts' claim because of the following policy provision:
To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies. The claim must also first be made while this agreement is in effect.
However, La. R.S. 22:629 states that:
A. No insurance contract delivered or issued for delivery in this state and covering subjects located, resident, or to be performed in this state ... shall contain any condition, stipulation, or agreement... limiting right of action against the insurer ... to a period of less than one year from the time when the cause of action accrues....
B. Any such condition, stipulation, or agreement in violation of this Section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.
It is alleged that the cause of action accrued on or about October 25, 1996. There is no dispute that prior to this date, Mrs. Bennett did not know she had cancer and did not know that Dr. Krupkin had erroneously diagnosed the lump on her breast. The instant policy provision requires that the Bennetts' claim be made prior to January 15, 1997. This contravenes the prohibition against [l]imiting the right of action against St. Paul to less than one year. The Bennetts filed the claim *926 with the Commissioner of Insurance on March 20, 1997 and filed this suit less than one month laterall well within the one year time frame envisioned by La. R.S. 22:629.
In Hedgepeth v. Guerin, supra, we discussed this issue in detail and found that:
[La. R.S. 22:629, La. R.S. 9:5628A, and La. R.S. 40:1299.45] guarantee a medical malpractice claimant a period of not less than one year within which to institute a claim against a health care provider and/or his insurer. However, a "claims made" policy, requiring that a claim be made within the policy period, may effectively reduce the time period within which a medical malpractice claimant may institute his action against the insurer.
Hedgepeth, 96-1044 at pp. 13-14, 691 So.2d at 1363.
We then concluded that a policy provision which reduces the prescriptive period against the insurer to less than one year is without effect. Hedgepeth, 96-1044 at p. 14, 691 So.2d at 1364. Under the undisputed facts of this case, the instant policy provision likewise effectively reduces the prescriptive period such that the Bennetts effectively had less than one year from the date of the accrual of their cause of action to commence the action against St. Paul. Because "[t]his would be a clear violation of the statutory law, which prohibits limiting a right of action against an insurer to less than one year," Hedgepeth, 96-1044 at p. 14, 691 So.2d at 1364, the district court properly granted summary judgment in favor of the Bennetts on the issue of coverage in this case.
St. Paul asserts that a case recently decided by the Supreme Court of Louisiana, Lloyd v. Ichinose, 98-2157 (La.9/8/99) 760 So.2d 302, requires that a different result obtain in this case. In Lloyd, the Supreme Court examined an issue very similar to the issue at bar; however, we find that the facts are highly distinguishable. Therein, Dr. Herbert Ichinose misdiagnosed the cancerous nature of a mole in December of 1987. In November of 1988, the plaintiffs filed suit against Dr. Ichinose. In May of 1995 the plaintiffs amended their petition to add his insurer, St. Paul. The policy period had expired on October 1, 1987, and the Court stated that it was significant that "the event that triggered policy coverage did not occur during the policy period." Lloyd v. Ichinose, 98-2157 at p. 10, 760 So.2d at 307. The Court reasoned that, "[u]nless there is a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume," Lloyd v. Ichinose, 98-2157 at p. 8, 760 So.2d at 306, and concluded that "the application of the requirement of the claims-made policy under the facts of the present case does not violate public policy." Lloyd v. Ichinose, 98-2157 at p. 10, 760 So.2d at 307. We distinguish Lloyd v. Ichinose because (i) significantly, there, the triggering event occurred outside the policy period while the instant triggering event occurred during the policy period; and (ii) there, the plaintiffs sought to add the insurer more than seven years after the insurance policy had expired while suit against the instant insurer was filed within a few months, well within the La. R.S. 22:629 one year period. For these reasons, we find Lloyd v. Ichinose inapposite to the instant case.

CONCLUSION
The district court correctly applied the law as discussed in Hedgepeth, supra, to facts which are not disputed to grant the final partial summary judgment, on the issue of coverage, in favor of the Bennetts and against St. Paul. Accordingly, we affirm at appellant's costs.
AFFIRMED.
WHIPPLE, J., concurs.
NOTES
[1] First Judicial District Court Judge Scott J. Crichton assigned pro tempore by order of the Supreme Court of Louisiana.
[2] The district court designated the partial summary judgment as a final and appealable judgment pursuant to La. C.C.P. art.1915, with an express determination that there is no just reason for delay.
[3] Mrs. Bennett passed away during this litigation; family members have been substituted as plaintiffs.
[4] This extension, referred to as "tail coverage," covers occurrences within the policy period that produce claims within the specified extended reporting period. See Lloyd v. Ichinose, 98-2157 (La.9/8/99), 760 So.2d 302, 304 n. 4.
[5] A letter, dated April 1, 1997, advised the Bennetts that Dr. Krupkin was not covered under the Patient's Compensation Fund; thereafter, they filed this lawsuit.
[6] Like the district court, we find coverage under Hedgepeth and La. R.S. 22:629 and therefore do not reach the question of whether these facts mandate coverage based upon the Direct Action Statute.